IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

URIEL MARCUS and BENEDICT VERCELES, on behalf of others similarly situated,

   Plaintiffs,

  v.

APPLE INC,

   Defendant.

No. C 14-03824 WHA

**ORDER GRANTING MOTION TO DISMISS**

## INTRODUCTION

In this putative product-defect class action, defendant moves to dismiss under FRCP 12(b)(6). For the following reasons, defendant's motion is **GRANTED**.

## STATEMENT

In May 2014, plaintiffs Uriel Marcus and Benedict Verceles filed this putative class action complaint against defendant Apple Inc. in the Southern District of Texas on behalf of all persons who purchased certain Apple MacBook laptop computers in the United States between May 20, 2010 and the present. In July 2014, Apple filed a motion to dismiss and a motion to change venue to the Northern District of California. Apple's motion to change venue was unopposed, and the action was transferred to this district. Apple then re-noticed and re-filed its motion to dismiss (Dkt. Nos. 7–8, 20–21, 25–26, 30).

The complaint contains the following factual allegations. Apple allegedly sold MacBook laptop computers containing defective "logic boards" that routinely failed within two years of purchase. Failure of the component logic board, which houses the computer's "integrated circuits and processors," rendered the computer useless. The complaint alleges that the logic board defect

was the result of negligent design, production, and testing, that Apple was aware of the defect for over six years, failed to notify consumers, and that Apple continues to market and sell the defective logic boards.

Plaintiffs further allege that in 2011, Apple CEO Tim Cook was told of the defective logic boards but did not act, and that Apple subsequently "willfully and intentionally" concealed knowledge of the defect (Compl. ¶ 3). The complaint also alleges that Apple was aware of the defective logic boards by virtue of complaints within "customer reviews" posted to the Apple Online Store. The complaint excerpts 27 of these reviews. Nevertheless, Apple continues to sell them.

Plaintiffs aver that Apple "markets the reliability and functionality of the logic board" for its MacBook computers. The complaint puts forth four alleged representations made by Apple regarding the laptop computers (Compl. ¶¶ 2, 17, 18, 19):

> Regarding the Macbook Pro series laptop computers, Apple makes the following representations: "State of the Art, Breakthrough, Easy Access to Connections and Ports."

> Regarding the MacBook series laptop computers, Apple makes the following representations: "The new MacBook is faster, has even more memory and storage, and is an ideal notebook for customers' growing library of digital music, photos and movies."

> Apple also boasts that its MacBook Pro is its "state of the art" flagship portable designed "for mobile professionals" and "life on the road."

> The MacBook Pro and Macbook were represented as being, "The world's most advanced notebook."

The complaint avers that contrary to Apple's advertisements, the logic board "is not 'durable' or 'designed to withstand the rigors of life on the go' but rather is defective, and tends to fail when used as intended" (Compl. ¶ 20).

Named plaintiff Uriel Marcus, a California resident, allegedly purchased a new Apple MacBook Pro computer containing a defective logic board in May 2012 that failed approximately 18 months later. Apple diagnosed the problem as a logic board failure, and declined to repair Mr. Marcus' computer or offer a refund, allegedly stating: "You should have bought the warranty" (Compl. ¶ 11).

2

Named plaintiff Benedict Verceles, a Texas resident, allegedly purchased a MacBook Pro in July 2011 that suffered a logic board failure less than one month later. Apple repaired the logic board under the computer's warranty for free. The replacement logic board then allegedly failed less than two years later. Apple informed Mr. Verceles "that the replacement logic board was defective" and Apple declined to pay for its repair (Compl. ¶ 12).

The complaint puts forth the following ten claims for relief: (1) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code 17200; (2) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code 1750 *et seq.*; (3) violations of the Texas Deceptive Trade Practices Act ("DTPA"); (4) fraud under Texas common law; (5) breach of implied warranty of fitness for a particular purpose; (6) breach of implied warranty of merchantability; (7) violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. 2310(d)(1); (8) violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code 1791 *et seq.*; (9) money had and received; and (10) unjust enrichment.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "plausibility standard" is not a probability requirement. *Ibid.* Still, "it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ibid.* (quoting *Twombly*, 500 U.S. at 557) (internal quotation marks omitted).

As an initial matter, this order addresses Apple's reference to *Deburro v. Apple Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) (Judge Sam Sparks). Apple avers that the *Deburro* action, which was dismissed with prejudice at the pleading stage in the Western District of Texas, and was also brought by plaintiffs' counsel Omar W. Rosales, was factually similar to the instant action, and included many of the same claims for relief. Plaintiffs,

3

however, contend that the instant action is dissimilar because *Deburro* "involved defective USB ports," instead of defective logic boards (Opp. 12). A review of the *Deburro* decision reveals that the case also involved faulty logic boards and that plaintiffs similarly alleged that "Apple's defective logic boards result[ed] in USB ports not functioning, or in the laptop itself being rendered unusable" and claimed "their MacBook Pro laptops were not fit for use because the logic boards failed five years after purchase." *Id.* at 1, 7. Apple does not allege that the instant action is barred by *res judicata*, but simply raises the *Deburro* action as a background fact.

1. **REQUEST FOR JUDICIAL NOTICE.**

Apple requests judicial notice be taken of two documents: (1) Apple's One Year Limited Warranty for its October 4, 2011, to March 27, 2013, MacBook Pro computers (applicable to Mr. Marcus's purchase); and (2) Apple's One Year Limited Warranty for its MacBook Pro computers before October 4, 2011 (applicable to Mr. Verceles's purchase) (Dkt. No. 30-1, 2 ). Plaintiffs' complaint makes reference to Apple's written warranty and plaintiff has not opposed Apple's request (Compl. ¶¶ 65, 76, 83). This order will therefore consider the documents in the context of Apple's motion. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 3017 F.3d 1119 (9th Cir. 2002). Apple's request for judicial notice is **GRANTED**.

2. **FRAUD-BASED CLAIMS FOR RELIEF.**

The complaint alleges that Apple violated provisions of Section 17200 of California's Unfair Competition Law, the CLRA, the Texas DTPA, and committed common law fraud in Texas. Apple avers that the heightened pleading standard of FRCP 9(b) applies to those claims for relief, and that plaintiffs have failed to meet their burden. This order agrees. Plaintiffs do not oppose application of FRCP 9(b) to their fraud-based claims.

FRCP 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Our court of appeals has interpreted FRCP 9(b) to require that a plaintiff state the "who, what, when, where, and how of the misconduct charged" as

4

well as "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citations and quotation marks omitted).

Claims brought under Section 17200 or the CLRA are subject to the heightened pleading standards of FRCP 9(b) if the claims are "grounded in fraud," meaning that the claims rely on a unified course of fraudulent conduct. *Kearns v. Ford Motor Company*, 567 F.3d 1120, 1125 (9th Cir. 2009). Plaintiffs here allege a fraudulent course of conduct, stating that Apple was aware of the defective logic boards, misrepresented its products' qualities, failed to disclose the defect to consumers, continued to market and sell computers containing defective logic boards, and concealed knowledge of the defect. Plaintiffs also specifically allege common law fraud (Compl. ¶¶ 3, 94–98). FRCP 9(b) therefore applies to plaintiffs' claims under Section 17200 and the CLRA. Plaintiffs' Texas common law fraud claims are additionally subject to FRCP 9(b). *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009). Plaintiffs' fraud-based DTPA claims alleging false, misleading, or deceptive acts or practices are similarly subject to FRCP 9(b). *See e.g. Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998).

### A. Section 17200.

The complaint alleges that Apple violated Section 17200 of California's Unfair Competition Law, which proscribes unfair competition including "any unlawful, unfair or fraudulent business act or practice . . ." Specifically, plaintiffs allege that Apple violated two prongs of Section 17200, the "unlawful" prong and the "unfair" prong. (Compl. ¶¶ 48, 50).

Under the "unlawful" prong of Section 17200, plaintiffs may "borrow" violations of other laws for purposes of establishing Section 17200 liability. *Cel-Tech Communications, Inc v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 539 (1999). The complaint alleges that Apple committed an alleged "unlawful" act or practice by "selling defective and non-merchantable laptops," "failing to use reasonable care in testing its laptops," and by "continuing to sell its defective laptops after learning that the logic boards would fail prematurely . . ." Plaintiffs aver that these alleged actions violate a list of statutes, namely: California Civil Code Sections 1770(a) and 1791, et seq., California Commercial Code Sections 2313 and 2314,

5

Uniform Commercial Code Sections 2-313 and 2-315, the MMWA (15 U.S.C. § 2310(d)(1)), and other common law doctrines (Compl.¶ 48).

Plaintiffs have not met the heightened pleading standards of FRCP 9(b) in alleging their Section 17200 claims. As discussed later in this order, plaintiffs fail to establish underlying violations of the CLRA (Cal. Civ. Code 1770(a)), the Song-Beverly Consumer Warranty Act (Cal. Civ. Code 1791), and the MMWA (15 U.S.C. 2310(d)(1)). Plaintiffs provide no other specific facts as to Apple's alleged violations of the remaining statutes. Merely naming the statutes is insufficient. The complaint therefore does not state with the required particularity how Apple's alleged conduct was unlawful under Section 17200.

The complaint also alleges that the same conduct constituted "unfair" acts or practices within the meaning of Section 17200. Although California courts have employed multiple methods for defining "unfair" under Section 17200, the so-called "balancing test" is frequently used. Under that test, the court examines the moral nature of the challenged business practice and weighs the utility of the defendant's conduct against the gravity of the harm to the alleged victim. *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922 (N.D. Cal. 2013) (Judge Jon S. Tigar). Here, plaintiffs merely state in conclusory fashion that Apple's practices "offend public policy and are unethical, oppressive, unscrupulous" and violate the laws stated above." The complaint does not state what public policy is offended, or why Apple's acts were unethical, oppressive, or unscrupulous. Instead, plaintiffs baldly state that the "gravity of Defendant's alleged wrongful conduct outweighs any purported benefits attributable to such conduct." Without more, such unsupported assertions fail to meet the particularity required under FRCP 9(b).

Furthermore, since plaintiffs' Section 17200 claim sounds in fraud, plaintiffs are required to prove actual reliance on the allegedly deceptive or misleading statements. *Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777, 793 (9th Cir. 2012). The only averment stating that plaintiffs relied on Apple's representations appears in the complaint's recitation of the elements of common law fraud (Compl. ¶ 95). The complaint does not allege which of Apple's representations were relied upon, when they were relied upon, or by whom.

6

1  Plaintiffs have not sufficiently plead any violation of a "borrowed" statute under the
2  Section 17200. Apple's motion to dismiss plaintiffs' Section 17200 claim is **GRANTED**.

### B. CLRA.

Plaintiffs allege that Apple violated three subsections of Section 1770(a) of the CLRA, which proscribes unfair methods of competition and unfair or deceptive acts or practices in sales to consumers. Apple avers that plaintiffs have failed to plead violations of the CLRA with the particularity required under FRCP 9(b).

The complaint alleges that Apple violated Section 1770(a)(5) by misrepresenting "that the laptops in question have characteristics, benefits, or uses which they do not have." Plaintiffs also aver that Apple violated Section 1770(a)(7) by misrepresenting "that the laptops in question are of a particular standard, quality, and/or grade, when they are of another." Finally, the complaint alleges that Apple violated Section 1770(a)(9) by advertising "the laptops in question with the intent not to sell them as advertised or represented" (Compl. ¶ 55(a), (b), (c)).

As noted, the complaint puts forth only four examples of representations or advertisements allegedly made by Apple regarding the laptop computers (Compl. ¶¶ 2, 17, 18, 19):

> Regarding the Macbook Pro series laptop computers, Apple makes the following representations: "State of the Art, Breakthrough, Easy Access to Connections and Ports."

> Regarding the MacBook series laptop computers, Apple makes the following representations: "The new MacBook is faster, has even more memory and storage, and is an ideal notebook for customers' growing library of digital music, photos and movies."

> Apple also boasts that its MacBook Pro is its "state of the art" flagship portable designed "for mobile professionals" and "life on the road."

> The MacBook Pro and Macbook were represented as being, "The world's most advanced notebook."

None of these representations mentions the computers' allegedly defective logic board. Plaintiffs do not specifically allege how the statements are false or misleading. The complaint merely avers that "Apple has made uniform representations that its laptops are high-quality products that will perform as represented" and that "contrary to its advertisements, Apple's logic board is not

7

1 'durable' or 'designed to withstand the rigors of life on the go' but rather is defective and tends to
2 fail when used as intended." (Compl. ¶¶ 20, 56). Plaintiffs' allegations do not correspond to the
3 text of the four alleged Apple representations. None of those representations contains the word
4 "durable," and the complaint provides no facts or context indicating that Apple represented its
5 products as "durable."

6 In their opposition, plaintiffs assert that the phrases "Most Advanced Notebook Ever" and
7 "State-of-the-Art" are actionable when presented "within a technical presentation that includes
8 *technical specifications*" (Opp. 16). In support, plaintiffs cite our court of appeals decision in
9 *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997), which stated that
10 "[a] specific and measurable advertisement claim of product superiority based on product testing
11 is not puffery."

12 This order detects nothing "specific or measurable" about the phrases "Most Advanced
13 Notebook Ever" or "State-of-the-Art." Those representations and the four put forth in the
14 complaint constitute non-actionable puffery. Further, the court in *Deburro* explicitly found the
15 first two of the representations quoted above to be "generic" and non-actionable. 2013 WL
16 5917665 at 4.

17 Plaintiffs also cite *Sanders v. Apple*, 672 F. Supp.2d 978, 988 (N.D. Cal. 2009) (Judge
18 Jeremy Fogel), which, in discussing representations regarding computer monitors, stated that
19 while "in an advertising context the phrase 'millions of colors' might be considered a vague
20 superlative, the fact that the phrase was used in the technical specifications section of Apple's
21 website transforms it into an express warranty . . ." Plaintiffs here contend that Apple's
22 representations, if presented alongside a "technical specification," would be actionable. Not so.
23 Plaintiffs' complaint did not attempt to establish the context of the representations, but merely
24 provided URLs and in one instance the date of a press release. Furthermore, the phrase "millions
25 of colors" is facially more measurable than plaintiffs' proffered representations. Plaintiffs'
26 proffered misrepresentations, which do not include statements of durability, are mere puffery.
27 Plaintiffs have therefore failed to adequately plead a violation of Section 1770(a) with the
28 particularity required under FRCP 9(b).

8

In their opposition, plaintiffs' additionally allege that their CLRA claims are adequately plead on a "fraud by omission" theory. Plaintiffs point to *Falk. V. General Motors Corp.*, 496 F.Supp.2d 1088, 1095 (N.D. Cal. 2007), to allege that Apple had a duty to disclose the logic board defect because Apple had superior knowledge of the defect and actively concealed it. That failure to disclose, plaintiffs aver, constitutes an unlawful omission under the CLRA.

In response, Apple cites our court of appeals in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012), which considered *Falk* in the context of an allegedly concealed design defect under the CLRA. The court in *Wilson* stated "California courts have generally rejected a broad obligation to disclose," and that generally "a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or safety issues." *Ibid.* (citing *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)). As already noted, plaintiffs have failed to plead the existence of any affirmative misrepresentations by Apple, and have not alleged any safety issues. Apple's motion to dismiss plaintiffs' CLRA claims is therefore **GRANTED**.

### C. Texas DTPA.

Plaintiffs allege that Apple violated multiple provision of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code 17.46. Specifically, plaintiffs allege that Apple violated Sections 17.46(b)(5), (7), (9), and (24). Apple avers that the claims fail under FRCP 9(b).

Plaintiffs' claims under Sections 17.46(b)(5), (7), and (9) pertain to affirmative representations made by Apple and they therefore fail for the same reasons as plaintiffs' CLRA claims. None of the proffered representations even mentions the allegedly defective logic board, and all constitute non-actionable puffery. Plaintiffs' complaint fails to plead Apple's alleged violation of Sections 17.46(b)(5), (7), and (9) with the particularity required under FRCP 9(b).

Section 17.46(b)(24) proscribes:

> failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

9

1  Plaintiffs' claim under Section 17.46(b)(24) would require Apple to have had knowledge of the
2  alleged logic board defect at the time of the computers' sale. FRCP 9(b) states that "knowledge"
3  may be alleged generally.
4      The complaint avers that Apple had knowledge of the defective logic boards for several
5  reasons. The complaint alleges that in 2011, "Apple CEO Tim Cook was told of the logic board
6  defect, but chose to do nothing" (Compl. ¶ 3). Plaintiffs provide no supporting facts for this
7  alleged communication or the context. Plaintiffs also allege (Compl. ¶ 22):

> Apple knows about this logic board defect. Combining a
> defective product design and manufacturing plants in China that
> engage in human rights violations (including child labor)
> Defendant Apple and CEO Timothy Cook have known about
> the situation for years.

11  To the extent discernible, plaintiffs allege that the nature and existence of Apple's manufacturing
12  operations in China was sufficient to impart Apple with knowledge of the alleged logic board
13  defect. This order disagrees.
14      Plaintiffs also allege that Apple had knowledge of the defect by way of customer
15  complaints posted to the Apple website. Between December 2010 and July 2012, customers
16  posted more than 365 "reviews" of laptop failures. The complaint excerpts 27 of these
17  anonymous reviews purportedly relating to logic board failures (Compl. ¶¶ 23, 24). Plaintiffs do
18  not indicate what number of those alleged 365 reviews referenced a logic board failure as
19  opposed to any other type of laptop failure. Additionally, all but four of the 27 excerpted
20  customer reviews were posted after Mr. Verceles allegedly purchased his computer in July 2011.
21  After review of the complaint, it cannot be said that Apple was plausibly imbued with knowledge
22  of the logic board defect through anonymous customer reviews posted to Apple's website for
23  purposes of Section 17.46(b)(24). *Cf. Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649
24  JF (PVT, 2010 WL 1460297 at 9 (N.D. Cal. 2013) (Judge Jeremy Fogel) (complaints posted to
25  Apple's website established the fact that consumers were complaining, not that Apple had notice
26  of defect). Plaintiffs further state that the "web page listing 'MacBook Pro Logic Board Failure'
27  has been viewed more than 140,000 times." Plaintiffs do not allege who viewed this web page,

10

1  when it was viewed, or how its passive viewing put Apple on notice of the alleged logic board
2  defect.

3  Finally, the alleged notification sent to Apple by plaintiffs pursuant to Section 17.505(a)
4  notifying Apple of its alleged breach of the DTPA is insufficient to establish knowledge under
5  Section 17.46(b)(24). The complaint does not state when such a notice was sent to Apple, and
6  whether Apple received the notice prior to plaintiffs' purchases. Apple's motion to dismiss
7  plaintiffs' claim under the Texas DTPA is therefore **GRANTED**.

### D. Texas Common Law Fraud.

The elements of fraud in Texas are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered an injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Plaintiffs' fraud claim is governed by FRCP 9(b).

Plaintiffs allege that Apple committed fraud because it represented that its MacBook computers were functional and suitable for sale, Apple sold those computers with defective logic boards, Apple knew the logic boards were defective, Apple advertised that the computers were suitable for use, and plaintiffs relied on Apple's statement of reliability (Compl. ¶ 95).

For the reasons noted, the complaint fails to plead the second element of fraud, as plaintiffs' have not adequately alleged misrepresentations by Apple. The four alleged misrepresentations constitute non-actionable puffery and therefore cannot be adjudged false. Those same representations do not even mention the allegedly defective logic boards. Furthermore, and as noted *supra,* plaintiffs fail to plead reliance with the particularity required under FRCP 9(b). This order need not consider the other elements of plaintiffs' fraud claim.

In their opposition brief, plaintiffs assert a claim of fraud by omission, stating that the claim was adequately plead under FRCP 9(b) and "requires fewer alleged facts regarding 'time, place, and specific content of an omission'" than claims of affirmative fraud (Opp. 27). Apple

11

avers that plaintiffs' claim for relief was improperly raised for the first time in plaintiffs' opposition brief, and that the complaint alleged fraud based on misrepresentations, not omissions.

As noted *supra*, plaintiffs put forth four alleged misrepresentations as a basis for this action. Plaintiffs also specifically alleged that Apple advertised the suitability of its computers and that plaintiffs relied on Apple's statements (Compl. ¶ 95). Plaintiffs may not attempt to change the nature of their fraud allegations in response to Apple's motion. However, even if this order were to consider plaintiffs' purported claim for fraud by omission, it would still fail under FRCP 9(b). Nondisclosure, as a type of misrepresentation in a fraud claim, must be pled with particularity under FRCP 9(b). *Kearns,* 567 F.3d at 1126–27 (9th Cir. 2009). Plaintiffs' pleadings do not state the nature of the nondisclosure or omission with the particularity required under FRCP 9(b). Apple's motion to dismiss plaintiffs' common law fraud claim is therefore **GRANTED**.

### 3. WARRANTY-BASED CLAIMS FOR RELIEF.

Plaintiffs assert claims for relief for violations of the Song-Beverly Consumer Warranty Act, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and violations of the MMWA.

#### A. Song-Beverly Consumer Warranty Act.

Plaintiffs allege Apple violated provisions of the Song-Beverly Consumer Warranty Act, California Civil Code 1791 et seq., by breaching certain implied warranties. Apple avers that the Act only applies to products purchased in California, and because plaintiffs have not alleged such purchases in California, plaintiffs' claims fail.

The California Supreme Court has held that the Song-Beverly Act only applies to goods purchased in California. *Cummins, Inc. v. Superior Court,* 36 Cal. 4th 478, 493 (2005). Plaintiffs' complaint does not allege in what state Mr. Marcus or Mr. Verceles purchased their computers. In an effort to correct this pleading defect, plaintiffs appended sworn affidavits from Mr. Marcus and Mr. Verceles to their opposition declaring the computers' place of purchase (Response Exh. 7). Mr. Marcus states that his computer was purchased online from Apple in California, and that the computer was shipped to his home in California. Mr. Verceles states that

1 he purchased his computer in Texas. Plaintiffs' complaint does not state where the purchases 2 were made, and the affidavits confirm that Mr. Verceles purchased his computer in Texas. Mr. 3 Verceles therefore has no claim under the Act.

Furthermore, at oral argument, plaintiffs contended that the California Supreme Court's decision in *Aryeh v. Canon Business Solutions, Inc.,* 55 Cal. 4th 1185, 1191–92 (2013), tolled the statute of limitations for breach of warranty claims until the defect was discovered. Plaintiffs argue that this holding allows them to pursue their Song-Beverly claims despite the fact that their alleged defects appeared after Apple's express warranty expired. Not so. *Aryeh* held that the statute of limitations for a UCL deceptive practices claim may be tolled under the discovery rule. *Aryeh* did not extend this statute of limitations holding to breach of warranty claims. To do so would be nonsensical. If a warranty period on a product did not begin to toll until the purchaser discovered a defect, the warranty would be useless. A product could break twelve years after it was purchased and under plaintiffs' theory, the warranty time period would begin then. This is not what *Aryeh* held and nothing in that decision saves plaintiffs in our case.

Apple's motion to dismiss plaintiffs' claims under the Song-Beverly Act is therefore **GRANTED**.

### B. Implied Warranty of Fitness for a Particular Purpose.

Plaintiffs allege that "Apple impliedly warranted that its laptops were reasonably fit for its particular purpose, i.e., to withstand usual wear as a portable device . . . . without premature failure of its logic board" (Compl. ¶ 72). In its motion, Apple avers that plaintiffs failed to adequately plead the elements of an implied warranty of fitness claim. This order agrees, and plaintiffs offer no substantive opposition to Apple's motion in this regard.

In order to state a claim for breach of implied warranty of fitness under Section 2315 of the California Commercial Code, a plaintiff must allege that (1) the seller has reason to know of a particular purpose for which the goods are required, and (2) that the buyer relies on the seller's skill or judgment to select or furnish suitable goods. That "particular purpose" differs from the ordinary purpose for which the goods are used "in that it envisages a specific use by the buyer which is peculiar to the nature of his business." *Am. Suzuki Motor Corp. v. Superior Court*, 37

13

1  Cal. App. 4th 1291, 1295 n. 2 (1995) (citations omitted). In defining the implied warranty of
2  fitness, Section 2.315 of the Texas Business and Commerce Code similarly requires that a seller
3  "has reason to know any particular purpose for which the goods are required," and defines
4  "particular purpose" as differing from the ordinary purpose for which the goods are used.

5  Here, plaintiffs plainly fail to allege that the computers were used for any purpose other
6  than their ordinary use as "a portable device." Apple's motion to dismiss plaintiffs' claim for
7  breach of implied warranty of fitness for a particular purpose is therefore **GRANTED**.

### C. Implied Warranty of Merchantability.

Plaintiffs allege that Apple "impliedly warranted that its laptops were reasonably functional for its intended use, i.e., to withstand usual wear as a portable device and to operate the laptop without premature failure." Plaintiffs further aver that Apple's laptops are not merchantable because "the logic board fails and disables the laptop, rendering the device useless" (Compl. ¶¶ 79, 80). Apple alleges that plaintiffs have inadequately plead a breach of the implied warranty of merchantability.

The implied warranty of merchantability warrants that goods are fit for the ordinary purposes for which such goods are used. Cal. Com. Code 2314(c); Tex. Bus. Com. Code 2.314(b)(3). The warranty does not impose a general requirement that goods precisely fulfill the expectations of the buyer, but instead "provides for a minimum level of quality." *Am Suzuki* at 1296 (citation omitted). A "breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use." *Mocek. v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). "A product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like, or even as well as it could." *General Motors Corpo. v. Brewer*, 966 S.W.2d 56, 57 (1998).

Plaintiffs have failed to adequately plead a breach of the implied warranty of merchantability. Mr. Marcus alleges that his computer's logic board failed 18 months after its purchase. Mr. Verceles' first computer allegedly suffered a logic board failure one month after purchase, but was replaced by Apple for free under warranty. His second computer's logic board

14

then failed "less than two years later." Plaintiffs have failed to allege that Apple's logic boards were unfit for their ordinary purposes or lacked a minimal level of quality. Both plaintiffs were able to adequately use their computers for approximately 18 months and two years, respectively.

Apple's motion to dismiss plaintiffs' claim for breach of the implied warranty of merchantability is therefore **GRANTED**.

### D. Magnuson-Moss Warranty Act.

Plaintiffs allege a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, *et seq*. A court applies state warranty law for claims under the MMWA. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n. 2 (9th Cir. 2009). Because the complaint fails to adequately plead state law implied warranty claims, plaintiffs' claims under the MMWA similarly fail. Apple's motion to dismiss plaintiffs' MMWA claim is therefore **GRANTED**.

### 4. MONEY HAD AND RECEIVED & UNJUST ENRICHMENT.

Plaintiffs assert claims for both money had and received and unjust enrichment. Apple avers that neither is a cause of action in Texas or California. Plaintiffs' opposition brief does not address Apple's motion with regard to money had and received, and plaintiffs have not put forward any authority supporting the cause of action. Plaintiffs' claim for money had and received is therefore conceded and Apple's motion to dismiss the claim is **GRANTED**.

Plaintiffs do assert, however, that unjust enrichment is a valid cause of action under California law. In California, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). As noted *supra*, plaintiffs' purchased computers were subject to Apple's express Limited Warranty. The existence of Apple's express Limited Warranty therefore precludes unjust enrichment as a cause of action, and Apple's motion to dismiss plaintiffs' claims is therefore **GRANTED**.

### CONCLUSION

For the foregoing reasons, Apple's motion to dismiss is **GRANTED**.

Plaintiffs will have until **JANUARY 22, 2015 AT NOON**, to file a motion, noticed on the normal 35-day calendar, for leave to amend their claims. A proposed amended complaint must be

15

appended to this motion. Plaintiffs must plead their best case. The motion should clearly explain how the amended complaint cures the deficiencies identified herein, and should include as an exhibit a redlined or highlighted version identifying all changes. If such a motion is not filed by the deadline, this case will be closed.

**IT IS SO ORDERED.**

Dated: January 8, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE